# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 7, 2013

Lyle W. Cayce
Clerk

No. 13-50016

CHRYSTIE T. NGUYEN,

Plaintiff - Appellant

v.

UNIVERSITY OF TEXAS SCHOOL OF LAW,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
U.S.D.C. No. 1:11-CV-323

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Chrystie T. Nguyen ("Nguyen") appeals the district court's grant of summary judgment in favor of the University of Texas School of Law ("UT Law") on her claim alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").[1]  We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The district court also granted summary judgment in favor of UT Law on Nguyen's claim alleging retaliation in violation of Title VII.  However, Nguyen did not oppose the entry of summary judgment on her retaliation claim and did not address this claim on appeal.  We therefore find that this claim has been waived.

No. 13-50016

## I. Facts

In 2006, Larry Sager ("Sager"), the newly-appointed Dean of UT Law, hired Nguyen, who is Vietnamese, as his executive assistant. By August 2008, both Sager and Nguyen agreed that Nguyen should be transferred to another department at UT Law. Sager convinced Michael Esposito ("Esposito"), UT Law's Assistant Dean and Director of the Continuing Legal Education ("CLE") Department, to accept Nguyen's transfer by offering to pay Nguyen's salary out of his office's budget.

Nguyen, Esposito, and Hollis Levy ("Levy"), the Associate Director of the CLE Department, ultimately agreed that Nguyen would work on special projects in the CLE Department and that she would be permitted to telecommute two days per week. Nguyen was given the title "Special Projects Coordinator," a position that was specially created for Nguyen and tailored to her skill set.[2] Esposito provided Nguyen with a document entitled "Job Duties and Work Protocols for Chrystie Nguyen" and with a document that listed various special projects that would be Nguyen's responsibility in her new role.

Following Nguyen's transfer, Esposito and Levy quickly began expressing dissatisfaction with Nguyen's work performance, especially on days when Nguyen telecommuted. Esposito continued to express frustration with Nguyen's lack of progress on her special projects and, over the course of the next year, increasingly assigned her conference coordination duties, which are normally handled by Program Coordinators in the CLE Department. Esposito and Levy eventually decided to renew Nguyen's appointment for six months but to revoke her telecommuting privileges, citing their dissatisfaction with her work product and level of communication. Nguyen denies that her work was unsatisfactory.

---

[2] The position was later discontinued after Nguyen left the CLE Department.

No. 13-50016

Ultimately, Esposito recommended to UT Law that Nguyen's appointment as Special Programs Coordinator not be renewed. This recommendation was followed and Nguyen's term expired on March 31, 2010.

Shortly following her departure, Nguyen filed an internal complaint with UT Law's Office of Institutional Equity. Nguyen then filed a charge of discrimination with the Civil Rights Division of the Texas Workforce Commission and with the United States Equal Employment Opportunity Commission. After those petitions were unsuccessful, Nguyen brought this action against UT Law, alleging racial discrimination and retaliation. UT Law filed for summary judgment on all claims, which the district court granted. Nguyen appeals only the dismissal of her racial discrimination claim.

## II. Standard of Review

We review a district court's award of summary judgment *de novo*, applying the same standard as the district court. *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 690 (5th Cir. 2010). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The evidence must be viewed in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

## III. Discussion

Title VII makes it unlawful for an employer, *inter alia*, to discharge or otherwise discriminate against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (citations and internal quotation marks omitted). Intentional discrimination can be established through either direct or circumstantial evidence. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir.

No. 13-50016

2007). Where, as here, the plaintiff produces only circumstantial evidence of discrimination, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), guides our inquiry.

Under the *McDonnell Douglas* framework, the plaintiff must first carry the initial burden of establishing a prima facie case of discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). To establish a prima facie case of racial discrimination in employment, Nguyen must establish: (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was subject to an adverse employment action; and (4) she was either replaced by someone outside her protected class, was treated less favorably than other similarly situated employees who were not members of her protected class, or was otherwise discharged because of her race. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Lawson v. S. Components, Inc.*, 410 F. App'x 833, 835 (5th Cir. 2011) (unpublished).

UT Law does not dispute that Nguyen is a member of a protected class, was qualified for her position, and was subject to an adverse employment action. Nguyen does not allege that she was replaced by someone outside of her protected class. Thus, the dispute focuses entirely on whether Nguyen was treated less favorably than other similarly situated employees who were not members of her protected class or was otherwise discharged because of her race. We agree with the district court that Nguyen has failed to make a showing sufficient to establish this element and, therefore, has failed to establish a prima facie case of racial discrimination.

Nguyen has failed to make a sufficient showing that she was treated less favorably than other similarly situated employees who were not members of her protected class because she has failed to identify a similarly situated employee. A plaintiff "must show 'nearly identical' circumstances for employees to be

considered similarly situated." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (quoting *Perez v. Tex. Dep't of Criminal Justice, Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004)).  Nguyen's position in the CLE Department was unique for several reasons: (1) she had a specially created position that had not previously existed in the CLE Department, that no other employee held during Nguyen's tenure, and that was discontinued after Nguyen's time with the CLE Department ended; (2) she was one of only two employees at the CLE Department who were permitted to telecommute and was the only employee who was permitted to telecommute, despite living near her place of employment; and (3) she was the only employee who was hired upon the direct recommendation of the Dean of UT Law and whose salary was paid out of his office, rather than from the CLE Department's budget.  Nguyen has failed to identify a similarly situated employee operating under circumstances nearly identical to hers and has, therefore, failed to make a sufficient prima facie showing on the ground of disparate treatment to avoid summary judgment.

Nguyen also has failed to make a sufficient showing that she was otherwise discharged because of her race.  Nguyen principally cites to three events as evidence of racial animus.  First, she points to an August 22, 2008 e-mail from Esposito to Levy forwarding an e-mail from Nguyen that contained a copy of her resume.  In that e-mail, Esposito, taking note of Nguyen's e-mail address, writes: "Impressive – NOTE her e-mail name 'shedragon' at GMAIL."  We agree with the district court that Nguyen has failed to articulate how this statement by Esposito is proof of racial animus.

Second, Nguyen cites to a September 11, 2008 e-mail from Esposito to Nguyen in which Esposito, in discussing their upcoming meeting, writes: "You may also meet Tsina [Napoliello], who just started last week–she has a somewhat similar background to you–Electrical Engineer, fluent in many languages, worked in Tokyo and The Hague (UN) and of pan-Asian descent."

No. 13-50016

Nguyen argues that none of these descriptions fit her profile, with the exception of her pan-Asian descent. However, in the copy of her resume e-mailed to Esposito on August 22, 2008, Nguyen stated that she was fluent in both English and Vietnamese and had also studied French, Japanese, and Thai. In addition, Nguyen's background in computer science is, at least, "somewhat similar" to Napoliello's background in electrical engineering. Regardless, we fail to see how this demonstrates racial animus.

Third, Nguyen points to the document entitled "Job Duties and Work Protocols for Chrystie Nguyen" that Esposito gave Nguyen. Specifically, Nguyen cites to the fourth section of this document, entitled "Expected Employee Behavior and Demeanor," which explained that CLE employees were expected to treat everyone "politely and with a friendly, interested, helpful, cheerful demeanor." It further provided: "[I]t is important in American/Texas business culture to look at people when speaking to them and being spoken to–looking down, looking away, or facial expressions of disinterest, eye-rolling, boredom, or contempt are completely unacceptable."

Nguyen argues that Esposito's reference to "American/Texas business culture"[3] evidences racial animus, noting that she was the only CLE employee to receive this document despite the fact that she had never worked outside of the United States and had worked in Texas for several years prior to this exchange. While her brief is not entirely clear on this point, Nguyen appears to rely on *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), for the proposition that this language constitutes impermissible racial stereotyping. In *Price*

---

[3] It is undisputed that, although another employee received a memo about expected deportment, Nguyen was the only one who received a memo referencing the "American/Texas business culture." Esposito contends he used this language only after Nguyen indicated that she exhibited certain behaviors because of her Asian heritage. Nguyen denies this assertion, and we must accept her presentation of the facts as accurate on this appeal from a summary judgment.

*Waterhouse*, the Court objected to the application of different standards of acceptable workplace behavior on men and women based on sex stereotyping, rewarding men for aggressiveness but requiring submissiveness and "ladylike" behavior in women.  490 U.S. at 251.

Here, however, the "Job Duties and Work Protocols for Chrystie Nguyen" document does not appear to require Nguyen to conform to a racial stereotype. Instead, Esposito provides that Nguyen must conform with norms prevalent in "American/Texas business culture." More importantly, Esposito did not indicate that he was applying a standard of acceptable workplace behavior to Nguyen or to Asians generally different from the standard applied to all CLE employees. Nguyen does not contend otherwise nor does she contend that the requirements contained in the memo (save and except the phrase "American/Texas business culture") were inappropriate or racially offensive.  Because Nguyen has failed to make a sufficient showing that Esposito  applied a different standard of acceptable workplace behavior to Nguyen based on the application of a racial stereotype from that applied to all CLE employees, *Price Waterhouse* is inapplicable.

Even accepting Nguyen's argument that there is a racial undertone to Esposito's "American/Texas business culture" language, she nonetheless fails to satisfy her summary judgment burden to raise a fact issue demonstrating that she was discharged because of her race for two reasons.  All three statements cited by Nguyen are too remote in time and too attenuated from Nguyen's short-term reappointment, which took place a year later, and the decision not to reappoint Nguyen, which took place a year-and-a-half later, to be probative of the question whether racial animus influenced these adverse employment actions. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) (stating that "where comments are vague and remote in time they are insufficient to establish discrimination" (internal brackets and quotation marks

omitted)).    They are also "stray remarks" similar to those that we have previously held to be too vague and too indirect to demonstrate racial animus. *See EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) ("This court has repeatedly held that 'stray remarks' do not demonstrate . . . discrimination.") (citations omitted); *see also Auguster v. Vermilion Parish School Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (holding that a comment made nearly a year before an adverse employment decision that appeared unrelated to that decision was a stray remark).    Accordingly, Nguyen has failed to meet her summary judgment burden on the question of whether UT Law otherwise discharged Nguyen because of her race and has thereby failed to present a prima facie case of discrimination.[4]    Because Nguyen has failed to establish a prima facie case of racial discrimination, we need not reach the subsequent steps of the *McDonnell Douglas* burden-shifting analysis.    *See McDonnell Douglas*, 411 U.S. at 802-04; *Reeves*, 530 U.S. at 142-43.

AFFIRMED.

---

[4] Nguyen cites a few other events as evidence of racial animus, including a birthday party where Levy chose not to offer Nguyen a piece of birthday cake and another instance where Nguyen was temporarily locked out of the computer system and had to obtain a new username and password.    Nguyen fails to present any evidence showing how these events were motivated by racial animus.