

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00405-CV

UNEEDA REED                                                                              APPELLANT

V.

COOK CHILDREN'S MEDICAL                                                          APPELLEE
CENTER, INC.

----------

## FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In three issues, Appellant Uneeda Reed challenges the trial court's summary judgment rendered in favor of Appellee Cook Children's Medical Center, Inc. (CCMC) on her claims for racial discrimination and retaliation. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Reed, an African-American female, began working at CCMC in May 2006. She worked the third shift as a lead tech in the Sterile Processing Department.

In December 2011, Reed met with Director of Nursing Sharon Smith because Reed felt that she was being treated unfairly. Reed believed that she should have been allowed to attend a training on the new T-DOC system,[2] but her department manager, Larry Ilse, chose three Caucasian individuals—a lead tech on the first shift, a first-year student on the second shift, and a supervisor—to attend the training. A few days later, Reed met with Susan Morrow, the Manager of Employee Relations, and discussed the racial discrimination issues that Reed perceived.

Approximately one month later in mid-January 2012, Morrow conducted interviews with all of the nonmanagement employees in the Sterile Processing Department, including Reed. Morrow asked the same questions of each employee, using a prepared list of questions that asked about communication

---

[2]In late 2011, the Sterile Processing Department began using a new software system called T-DOC to keep track of surgical instruments. The T-DOC system tracks whether surgical instruments have been sent out for repairs and allows employees to access lists of instruments that need to be on a surgical tray for different types of surgeries; employees in the Sterile Processing Department can then print off a list, gather the necessary instruments, and assemble the surgical trays. In order for employees to access the T-DOC system, their user IDs need to be added to the system by "administrators." Consequently, the T-DOC system required several employees to be trained as "administrators" so they could add new user IDs to the T-DOC system and update the system when a doctor requested a change to the list of surgical instruments on a surgical tray.

within the department, physical working conditions within the department, opportunities for advancement, whether the employee's manager followed policies and procedures, whether the employee's manager treated employees fairly, any feedback employees receive, and suggestions for improvement. During the course of the interviews, several employees raised unsolicited complaints about Reed, including the following:

- Reed doesn't like the day-shift lead tech and will not communicate with her;

- Reed talks down to her staff;

- Reed is rude and disrespectful;

- Reed talks about "poor choices" in other employees' lives;

- Reed engages in gossip;

- Employees dread coming to work because Reed is verbally and personally abusive to them;

- Employees are fearful of retaliation from Reed;

- Reed, unprovoked, said to a staff member, "You do know I am the Lead Tech, don't you?" The staff member said, "Yes, I do," and asked if he/she had done anything wrong. Reed then replied, "No, but it is best you do what I say or you are going to regret it."

- Reed stated that "if anyone goes to human resources on her, she keeps a journal, and they are going to regret it";

- Reed uses curse words, including the "F" word, in the workplace;

- Reed is unfair with work assignments;

- Reed rants and speaks badly about staff members to other staff members; and

3

- Reed is very mean, speaks harshly, and is always fighting with someone.

Some of the complaints were first-person accounts of Reed's behavior, but some were made by other employees who had witnessed Reed's behavior directed to someone else. Morrow prepared a summary of the results of her interviews and passed along the summary to her supervisor.

In February 2012, Smith and Ilse met with Reed and told Reed that her coworkers had made several complaints about her job performance. During the meeting, Ilse observed Reed's rolling her eyes and smirking as the issues were raised. Reed denied all of the issues and would not concede any truth, even in situations where one or more employees had corroborated her behavior toward others. Approximately one week after the meeting, Ilse informed Reed that she had been demoted from lead tech to Tech 1 and that her pay was cut due to disruptive behavior.[3] Ilse also told Reed that she could still interview for the coordinator position for which she previously had applied but that the demotion would weigh heavily against her receiving the promotion; Ilse later hired a Caucasian female for the coordinator position.

Reed filed a charge with the Equal Employment Opportunity Commission (EEOC). The EEOC was unable to conclude that a statutory violation had occurred and notified Reed of her right to file suit.

---

[3]As of the time that Ilse completed his declaration, which was not dated but was attached to CCMC's motion for summary judgment that was filed on May 31, 2013, Reed's former position as a lead tech had not been filled, and Reed continued to work for CCMC.

4

Reed filed suit against CCMC, alleging causes of action for racial discrimination and for retaliation under Title VII of the Civil Rights Act of 1964 and chapter 21 of the Texas Labor Code. In due course, CCMC filed a traditional motion for summary judgment on Reed's claims and attached summary-judgment evidence. Reed filed a response and attached summary-judgment evidence. CCMC objected to seven of Reed's exhibits,[4] and the trial court sustained CCMC's objections. The trial court thereafter granted CCMC's motion for summary judgment, ordered that Reed take nothing by her suit, and dismissed with prejudice all of Reed's claims against CCMC. Reed perfected this appeal.

### III. TRIAL COURT DID NOT ABUSE ITS DISCRETION BY EXCLUDING EXHIBITS

In her first issue, Reed argues that the trial court erred by sustaining CCMC's objections to her summary-judgment evidence after finding that the statements in the seven exhibits did not constitute admissions by a party opponent.

---

[4]CCMC also objected to an attachment to Reed's affidavit, which contains a document that Reed had prepared detailing the complaints she was making against CCMC; the trial court sustained CCMC's objection. We will not consider that piece of excluded summary-judgment evidence in our summary-judgment review because Reed does not challenge it on appeal. *See Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied) ("Where evidence has been held to be inadmissible and that holding has not been challenged on appeal, this court cannot consider the excluded evidence.").

## A. The Excluded Exhibits at Issue[5]

Reed's Exhibits 6 through 12 contain notes taken by Morrow during her interviews with various nonmanagement employees of the Sterile Processing Department. The notes of the nonmanagement employees' responses that are pertinent to Reed's claims include the following:

- "[W]hite people get communications, others have to hear things from them"; Ilse does not apply some standards across the board; "thinks it is a black & white thing going on in dept."; and Ilse promoted one employee after six months without posting the position but made Reed apply for a lead tech position.

- Ilse does not communicate well with Reed. This particular employee was not sure if the managers were racially prejudiced or not.

- "[F]eels this is a black/white thing." In response to the question about whether Ilse provides on-the-job training, this employee responded that Reed does not get assignments.

- "[F]eels [C]aucasians are afforded more/better opportunities than other races."

- Sees "black/white issues in dept." and said that Ilse treats and communicates better with the white lead tech than the black lead tech and that Ilse could meet with Reed before he leaves for the day.

---

[5]CCMC points out in its brief that when it filed its objection in the trial court, it mistakenly identified the objectionable exhibits as "Exhibits 7 – 13 (Interview Notes)." It is clear from the description that CCMC was referring to Exhibits 6 through 12 because Exhibit 6 contains interview notes, while Exhibit 13 contains excerpts from a deposition. Moreover, it appears from the trial court's notation in the order sustaining CCMC's objections—"801 does not apply – no admission by a party opponent just notes of statements"—that the trial court understood that CCMC was referring to Exhibits 6 through 12. We therefore analyze whether the trial court erred by sustaining CCMC's objections to Exhibits 6 through 12 that were attached to Reed's summary-judgment response.

6

Throughout the responses, the issues that the nonmanagement employees repeatedly brought up included that there was insufficient communication within the department, that less-experienced employees were being treated better than more experienced employees, that the scheduling was not done fairly, and that night-shift workers did not receive the same training as day-shift workers.

## B. Standard of Review

We review a trial court's decision to exclude summary-judgment evidence for an abuse of discretion. *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 667 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Holloway v. Dekkers*, 380 S.W.3d 315, 318 (Tex. App.—Dallas 2012, no pet.). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

## C. Applicable Rules of Evidence

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). The "hearsay rule" excludes the admission of hearsay evidence. Tex. R. Evid. 802. However, the rules of evidence also provide that many types of hearsay evidence are not excluded by the hearsay rule. *See* Tex. R. Evid. 803, 804.

A statement that is hearsay may contain additional hearsay within it, i.e., hearsay within hearsay. "Hearsay included within hearsay is not excluded under

7

the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule" provided in the rules of evidence. Tex. R. Evid. 805.

The rules of evidence contain an exception from the hearsay rule for admissions by a party opponent. Tex. R. Evid. 801(e)(2). Texas Rule of Evidence 801(e)(2) sets forth the requirements for a statement to qualify as an admission by a party opponent:

The statement is offered against a party and is:

> (A) the party's own statement in either an individual or representative capacity;

> (B) a statement of which the party has manifested an adoption or belief in its truth; [or]

> . . . .

> (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

Tex. R. Evid. 801(e)(2)(A), (B), (D).

The proponent of hearsay evidence has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

## D. Analysis

Here, in arguing that the trial court abused its discretion by excluding Exhibits 6 through 12, Reed relies on the exclusions from the hearsay rule that

8

are set forth above. *See* Tex. R. Evid. 801(e)(2)(A), (B), (D). With regard to the exclusion from hearsay under rule 801(e)(2)(A), there is no evidence that the statements in the notes were CCMC's own statements; the statements were not made by a supervisory official but were instead made by nonmanagement employees who did not serve in a representative capacity for CCMC. *Cf. Johnson v. Saks Fifth Ave. Tex., L.P.*, No. H-05-1237, 2007 WL 781946, at *11– 12 (S.D. Tex. Mar. 9, 2007) ("A statement by a supervisory official who plays a role in the decisionmaking process is generally admissible."). With regard to the exclusion from hearsay under rule 801(e)(2)(B), there is no evidence in the record that CCMC adopted the statements of the nonmanagement employees that were recorded in Morrow's notes or that CCMC believed the truth of the statements; CCMC did not reference Exhibits 6 through 12, nor did CCMC rely on any of the statements contained in Exhibits 6 through 12—none of which complain of Reed—for demoting Reed. With regard to the exclusion from hearsay under rule 801(e)(2)(D), the statements made by the nonmanagement employees about racism in the Sterile Processing Department did not concern a matter within the scope of the their employment. *See Nichols v. Bennett Detective & Protective Agency, Inc.*, 245 F. App'x 224, 229 (3rd Cir. 2007) (holding that trial court did not abuse its discretion in declining to consider statement of "time and attendance specialist" that supervisor was racist because statements did not concern matters within scope of employee's employment).

9

Because none of the exceptions proffered by Reed apply, the statements made by the nonmanagement employees are inadmissible hearsay.

The documents containing the nonmanagement employees' statements also constitute a second level of hearsay to which an exception must apply. *See* Tex. R. Evid. 805. Reed did not address the double hearsay issue in her brief.[6] Under similar circumstances, notes taken by a human-resources employee during the course of an internal investigation have been determined to be inadmissible hearsay. *See Ryals v. Am. Airlines, Inc.*, No. 4:08-CV-460-Y, 2010 WL 3582605, at *7, *11 (N.D. Tex. Sept. 13, 2010) (noting that "the factual contentions recorded in the notes were apparently related by other employees, . . . causing the bulk of the notes to be double hearsay"), *aff'd*, 2014 WL 279756 (5th Cir. Jan. 27, 2014). Here, because Reed did not demonstrate that the notes taken by Morrow during the course of an internal investigation fit into an exception, the notes found in Exhibits 6 through 12 contain double hearsay and are inadmissible. *See* Tex. R. Evid. 805; *Ryals*, 2010 WL 3582605, at *7, *11.

---

[6]Moreover, Reed negated a potential hearsay exception for business records found in Texas Rule of Evidence 803(6) when she acknowledged in her affidavit that in her six years of employment with CCMC, she had "never know[n] of anytime that an entire department was asked to take a survey . . . ." *See* Tex. R. Evid. 803(6) (describing hearsay exception for business records "if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation").

10

We hold that the trial court did not abuse its discretion by excluding Exhibits 6 through 12 attached to Reed's summary-judgment response. We overrule Reed's first issue.

## IV. SUMMARY JUDGMENT WAS PROPER ON REED'S RACIAL DISCRIMINATION AND RETALIATION CLAIMS

In her second issue, Reed argues that the trial court erred by granting CCMC's motion for traditional summary judgment on her claim for racial discrimination. In her third issue, Reed argues that the trial court erred by granting CCMC's motion for traditional summary judgment on her claim for retaliation.

### A. Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d

11

494, 508 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

## B. Title VII and the Texas Commission on Human Rights Act

The Texas Commission on Human Rights Act (TCHRA)[7] is modeled after federal law with the purpose of executing the purposes of Title VII of the Civil Rights Act of 1964. Tex. Lab. Code Ann. § 21.001 (West 2006); *see NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). Under both Title VII and the TCHRA, an employer commits an unlawful employment practice if because of race the employer fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2 (2012); Tex. Lab. Code Ann. § 21.051(1) (West 2006). It is also an unlawful employment practice under both Title VII and the TCHRA if the employer retaliates against a person who makes or files a charge of discrimination. 42 U.S.C. § 2000e-3 (2012); Tex. Lab. Code Ann. § 21.055 (West 2006). The Fifth Circuit has held that "the TCHRA is coextensive with Title VII," and thus the same analytical framework is used in a discrimination

---

[7]We note that the Texas Commission on Human Rights was abolished and that all of the powers and duties of that Commission were transferred to the Texas Workforce Commission civil rights division. *See* Tex. Lab. Code Ann. § 21.0015 (West 2006). However, for ease of reference, we continue to refer to chapter 21 of the Texas Labor Code as the TCHRA. *But see Tex. Dep't of Family & Protective Servs. v. Howard*, No. 05-13-00817-CV, 2014 WL 1464758, at *3 n.2 (Tex. App.—Dallas Apr. 15, 2014, no pet. h.) (stating that the Dallas court no longer refers to chapter 21 as the TCHRA).

case under the TCHRA as that which is used in a Title VII case. *See Evans v. City of Houston*, 246 F.3d 344, 349 (5th Cir. 2001).

### C. *McDonnell Douglas* **Burden-Shifting Analysis**

In discrimination cases that have not been fully tried on the merits, we apply the *McDonnell Douglas Corp. v. Green* burden-shifting analysis. 411 U.S. 792, 802–03, 93 S. Ct. 1817, 1824–25 (1973); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S. Ct. 2097, 2106 (2000); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003). Under *McDonnell Douglas*, the plaintiff in an employment discrimination suit must first present evidence of a prima facie case of discrimination. *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106. Once a plaintiff presents a prima facie case of discrimination, the burden shifts to the defendant to articulate "a legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 142, 120 S. Ct. at 2106. If the defendant proffers a nondiscriminatory rationale for the adverse employment decision, the burden returns to the plaintiff to show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143, 120 S. Ct. at 2106. Although the burden-shifting analysis shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981).

## D.  Reed Failed to Present Evidence of a Prima Facie Case of Racial Discrimination

CCMC moved for summary judgment on Reed's racial discrimination claim, arguing that Reed could not establish a prima facie case of racial discrimination because there had been no ultimate employment decision.

In the absence of direct evidence, a plaintiff establishes a prima facie case of racial discrimination in employment by showing that (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was subject to an adverse employment action, and (4) she was either replaced by someone outside her protected class, was treated less favorably than other similarly situated employees who were not members of her protected class, or was otherwise discharged because of her race.  *Nguyen v. Univ. of Tex. Sch. of Law*, 542 F. App'x 320, 323 (5th Cir. 2013).  In a discrimination case, "[a]n adverse employment action means an ultimate employment decision."  *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003).  Ultimate employment decisions that are actionable include decisions to hire, discharge, promote, compensate, or grant leave but not events such as disciplinary filings, supervisor's reprimands, or even poor performance reviews—anything that might jeopardize employment in the future.  *See Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997), *cert. denied*, 525 U.S. 1067 (1999); *see also Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003).  Title VII and chapter 21 of the Texas Labor Code were designed to address ultimate employment decisions, not

14

every action that occurs in the workplace that makes an employee unhappy. *See Messer*, 130 F.3d at 140.

Portions of Reed's deposition relied upon by CCMC as summary-judgment evidence show that during Reed's deposition, she testified that the basis of her racial-discrimination claim was that she did not receive T-DOC training[8] and that she was not chosen to work on a special assignment. Although asked in her deposition whether she had suffered any other negative consequences that she contended were because of her race, she indicated that these were the two discriminatory actions she relied upon—that she did not receive T-DOC training and that she was not chosen to work on a special assignment.[9] Reed did not have personal knowledge of who made the decision about which employees would attend the T-DOC training. Reed said that her pay was not affected as a result of not being chosen to attend the T-DOC training, that it did not affect any other aspect of her employment status, and that she had no knowledge of whether the employees who had attended the T-DOC training had received a raise as a result of attending the training. Reed testified that she had no facts

---

[8]Reed admitted that she had received some basic training on using the T-DOC system but said that she did not receive any administrative training on it.

[9]Although pleadings do not constitute summary-judgment evidence, we note that Reed's live pleadings contain a general factual background section that does not differentiate between which employment actions she claims were discriminatory versus those she claims were retaliatory. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (stating that pleadings, even if sworn to, do not constitute competent summary-judgment proof).

that race was a motivating factor—that "was just [her] feeling that's what happened." She admitted that no one ever said anything about her race in connection with this decision, that no one ever commented on her race to her during her employment at CCMC, and that her manager Ilse never said anything negative to her about her race.

With regard to not being chosen for the special assignment, Reed testified at her deposition that she could recall only one special assignment—updating policies and procedures in the Sterile Processing Department—that came up during the time that she was a lead tech. Reed's pay was not affected as a result of not getting to work on the special assignment, no other aspect of her employment status was affected as a result of not getting to work on the special assignment, and she was not aware whether the employee who was selected had received a raise as a result of working on the special assignment. Reed did not know who made the decision to not choose her for the special assignment, and she did not have any personal knowledge of the reason why she was not chosen. Reed testified that it was her opinion that race was a motivating factor in the decision not to select her to work on the special assignment, but she admitted that she did not have any facts to support her allegation that race was a motivating factor.

As a matter of law, neither of these actions—not selecting Reed to attend the T-DOC training and not selecting Reed to work on a special assignment—constitute an ultimate employment decision that will support a racial-

discrimination cause of action.  *See Roberson v. Game Stop/Babbage's*, 152 F. App'x 356, 361 (5th Cir. 2005) (stating that refusal to allow an employee to attend a training conference did not constitute an adverse employment action), *cert. denied*, 548 U.S. 924 (2006); *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.) (stating that a decision made by an employer that only limits an employee's opportunities for promotion or lateral transfer does not qualify as an adverse employment action), *cert. denied*, 540 U.S. 817 (2003); *see also Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) ("Where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was [not] transferred [to] a prestigious and desirable position . . . that evidence is insufficient to establish an adverse employment action.").  Accordingly, Reed failed to meet her initial burden of presenting evidence of a prima facie case of racial discrimination because the factual grounds forming the basis of this claim as stated by Reed in her uncontroverted deposition testimony do not rise to the level of an ultimate employment decision, which is necessary to establish that an adverse employment action occurred.  *See Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106; *Griffin v. Sea Mar Mgt., Inc.*, 243 F. App'x 852, 854 (5th Cir. 2007) (holding that plaintiff did not present a prima facie case of intentional racial discrimination because refusal to promote appellant did not constitute an adverse employment action).

Because Reed did not meet her initial burden of presenting evidence of a prima facie case of racial discrimination, we hold that the trial court did not err by granting CCMC's motion for summary judgment on Reed's claim for racial discrimination.  We overrule Reed's second issue.

### E.  Reed Failed to Show that CCMC's Legitimate, Nondiscriminatory Reason for Her Demotion Was a Pretext for a Claim of Retaliation

CCMC moved for summary judgment on Reed's retaliation claim, arguing, among other things, that CCMC had articulated a legitimate, nonretaliatory reason for its decision to demote Reed and that Reed had provided no evidence to create a fact issue on pretext.

### 1.  Prima Facie Case of Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse employment decision.  *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 730 (Tex. App.—Fort Worth 2006, no pet.); *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 376 (Tex. App.—Fort Worth 2006, no pet.).  For purposes of our analysis, we will assume that Reed presented evidence of a prima facie case of retaliation.  *See, e.g., Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*, 438 F. App'x 343, 346 (5th Cir. 2011) (assuming without deciding that plaintiff established a prima facie case of retaliation), *cert. denied*, 132 S. Ct. 1970 (2012).

18

## 2. CCMC's Legitimate, Nondiscriminatory Reason for Reed's Demotion

Assuming that Reed presented evidence that a causal link existed between her internal complaint and her demotion, thus establishing a prima facie case of retaliation, the burden shifted to CCMC to articulate a legitimate, nondiscriminatory reason for Reed's demotion. CCMC's nondiscriminatory reason for Reed's demotion is that she was demoted for disruptive behavior. Reed concedes in her brief that disruptive behavior is a nondiscriminatory reason for her demotion but argues that CCMC did not make any attempt to explain its decision not to promote Reed or to cut her pay. Reed did not, however, base her retaliation claim on the failure to be promoted; instead, she based her retaliation claim exclusively on the demotion.[10] Moreover, Reed's reduction-in-pay argument is part and parcel of the demotion, not a separate action. *See* Black's Law Dictionary 497 (9th ed. 2009) (defining "demote" as "[t]o lower (a person) in rank, position, or pay").

### 3. Reed's Attempts to Create a Fact Issue on Pretext

Because CCMC provided a legitimate, nondiscriminatory reason for demoting Reed, the burden returned to Reed to present evidence that CCMC's reason was a pretext for discrimination, that is, CCMC's articulated reason for

---

[10]As stated in her deposition,

> Q. Is there anything else that has happened to you during your employment that you think is retaliation besides being demoted?

> A. No.

19

Reed's demotion was false, and the real reason for CCMC's action was retaliatory. An employee establishes pretext for a retaliation claim by showing that her protected activity was a but-for cause of the alleged adverse action by the employer. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533–34 (2013) (setting forth but-for causation standard for retaliation claims filed under Title VII); *Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487, 497 (Tex. App.—Amarillo 2009, pet. denied) (setting forth but-for causation standard for retaliation claim filed under section 21.055 of the Texas Labor Code). The employee must show the adverse employment action would not have been taken but for her protected activity. *Ptomey*, 277 S.W.3d at 497. Thus, we must determine whether the summary-judgment evidence is of such substance that on its consideration, reasonable and fair-minded people could disagree whether CCMC would not have demoted Reed but for the complaint of racial discrimination that she made to Morrow.

Here, Reed argues that the summary-judgment evidence shows a temporal proximity between the protected activity and her demotion, a pattern of discrimination by CCMC, and disparate treatment of employees based on race. We address each of her arguments below.

Reed first attempts to create a genuine issue as to pretext based on the temporal proximity between the protected activity (her notifying CCMC of racial discrimination) and her demotion, both of which occurred within less than two months. Although close timing between an employee's protected activity and an

adverse employment action against her may provide the "causal connection" required to make out a prima facie case of retaliation, we have already assumed that Reed established a prima facie case of retaliation. *See Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.), *cert. denied*, 522 U.S. 948 (1997); *Escobedo v. Tex. Bd. of Pardons & Paroles*, Civil Action No. H-06-3949, 2009 WL 277562, at *11 n.1 (S.D. Tex. Feb. 4, 2009), *aff'd*, 354 F. App'x 4 (5th Cir. 2009). "[T]emporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008); *see also Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 656 (5th Cir. 2004) (holding that without more than timing allegations, and based on employer's legitimate, nondiscriminatory reason for retaliation, summary judgment in favor of employer was proper). Thus, Reed's temporal proximity argument alone is insufficient to create a genuine issue as to pretext because CCMC has provided a nondiscriminatory reason for Reed's demotion.

Reed also attempts to raise a genuine issue as to pretext by pointing to the notes in Exhibits 6 through 12, arguing that they show a pattern of discrimination by CCMC. We held above, however, that the trial court did not abuse its discretion by excluding these exhibits, and we therefore need not consider them.[11]

---

[11]Even if we were to consider the excluded exhibits, Reed produced no evidence that the statements were made by a decision maker or that the

21

Lastly, Reed attempts to raise a genuine issue as to pretext arguing that she "provided summary judgment evidence and analysis that African-American and Caucasian employees were treated differently for similar actions." To establish disparate treatment, Reed must demonstrate that a "similarly situated" employee under "nearly identical" circumstances was treated differently. *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir.), *cert. denied*, 546 U.S. 1061 (2005). Reed does not do this in her brief; instead, she points to her summary-judgment response, which relies on the examples of two Caucasian employees: Stanton, who was caught sleeping in Ilse's office on two occasions

nonmanagement employees who made the statements were in a position to influence the individual(s) making the decision on Reed's demotion. *See Elgaghil v. Tarrant Cnty. Junior College*, 45 S.W.3d 133, 140 (Tex. App.—Fort Worth 2000, pet. denied) ("Stray remarks made in the workplace by non-decision makers, without more, are not evidence of the employer's intent to discriminate."). Moreover, we would conclude that the exhibits fail to raise a genuine issue as to any material fact about whether Reed was retaliated against because of statements that she made to Morrow in December 2011 regarding perceived racial discrimination. Although there are broad, generalized statements in the notes that nonmanagement employees believe racial issues exist in the Sterile Processing Department, none of the statements in the notes connect the racial issues in the department to Reed's retaliation issue. *Cf. Burton v. Carter BloodCare*, No. 02-11-00003-CV, 2012 WL 42899, at *9 (Tex. App.—Fort Worth Jan. 5, 2012, no pet.) (mem. op.) (holding that even if appellant's deposition was considered, "we would conclude that it fails to raise a genuine issue of material fact about whether appellant was discharged because of her age"; appellant stated in her disposition that she had "no basis of fact" for stating that employees who were allegedly treated differently were younger than appellant). Because the result would be the same whether or not Exhibits 6 through 12 were excluded, Reed has failed to show that the allegedly erroneous exclusion of Exhibits 6 through 12 probably resulted in an improper judgment and that the judgment turns on the particular evidence excluded. *See* Tex. R. App. P. 44.1(a); *Cmty. Initiatives, Inc. v. Chase Bank of Tex.*, 153 S.W.3d 270, 281–82 (Tex. App.—El Paso 2004, no pet.) (holding that exclusion of summary-judgment evidence was harmless and not reversible).

22

and was terminated, and West, who garnered employee complaints for foul language and for not assigning any work to herself but was not demoted. Because Reed provides no evidence to support her claims about Stanton, she has not demonstrated that she and Stanton are similarly situated employees who were treated differently under nearly identical circumstances. With regard to West, according to Reed's non-excluded summary-judgment evidence, Ilse could not substantiate the claim that West had used a curse word when she accused an African-American employee of taking things from her desk, and scheduling was not shown to be a task common to both Reed and West. This leaves only one other claim in Reed's non-excluded summary-judgment evidence that West used foul language and exhibited a temper, which is not enough, standing alone, to establish pretext.[12] *See Hill v. Sodexho Servs. of Tex., L.P.*, No. A-05-CA-732-LY, 2007 WL 4234261, at *9 (W.D. Tex. Nov. 29, 2007) (report and recommendation of the U.S. Mag. J.) (stating that single incident, standing alone, was not enough to demonstrate pretext); *see also Nichols v. Bennett Detective &*

---

[12]CCMC argues that the only thing that Reed ultimately relies on to establish pretext is her opinion. Although Reed's subjective beliefs regarding the alleged discrimination and retaliation are sprinkled throughout her arguments, we do not find any place in Reed's summary- judgment response or her brief where she relies on her opinion to establish pretext for her retaliation claim. However, to the extent that Reed attempts to show pretext by relying on her subjective belief that she was retaliated against based on her race, we agree with CCMC that subjective beliefs are not admissible. *See Aryain*, 534 F.3d at 487 (stating that plaintiff cannot show pretext simply by re-raising her otherwise non-actionable allegations of retaliation—such an argument offers no more than the plaintiff's subjective belief that the defendant acted in a retaliatory manner on multiple occasions).

*Protective Agency, Inc.*, 245 F. App'x 224, 230 (3rd Cir. 2007) (stating that while evidence—involving a single incident in which employer treated a member of the protected class differently from a non-member of the protected class—is arguably sufficient to allow employee to make out a prima facie case of discrimination, such evidence is not enough, standing alone, to support an inference of discriminatory intent "at the pretext stage where the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity").

We hold that CCMC satisfied its burden to establish as a matter of law a legitimate, nondiscriminatory reason for demoting Reed. Furthermore, we hold that Reed failed to raise a genuine issue concerning whether her demotion would not have occurred but for her complaint to Morrow about alleged racial discrimination. The trial court therefore did not err by granting CCMC's motion for summary judgment on Reed's retaliation claim, and we overrule Reed's third issue.

## V. CONCLUSION

Having overruled Reed's three issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DELIVERED: May 29, 2014

24